# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RAUSS GREGORY BALL,

Defendant-Appellant.

UNPUBLISHED
January 23, 2018

No. 332561
Jackson Circuit Court
LC No. 13-004267-FH

Before: MURPHY, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), and possession of an open alcohol container in a vehicle, MCL 257.624a. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 18 to 96 months in prison for the possession of cocaine conviction and 90 days in jail for the open alcohol container conviction. We affirm.

Defendant's convictions arise from a traffic stop on March 24, 2013. After the officer stopped defendant's vehicle, defendant refused to open his car window, refused to provide requested information, and demanded to speak to the trooper's supervisor. The trooper eventually broke the driver's side window of defendant's vehicle, handcuffed defendant, and removed him from the vehicle. A search of defendant's person revealed a quantity of cocaine in defendant's pocket. An open can of beer was discovered on the floor of the passenger side of the vehicle.

Before trial, defendant filed a motion to dismiss after the prosecution was unable to produce any video or audio recording of the traffic stop. After conducting an evidentiary hearing, the trial court could not find that a video recording ever existed, and found that if an audio recording was made, it no longer existed and there was no evidence that it was destroyed in bad faith. Accordingly, the court denied defendant's motion to dismiss.

The jury found defendant guilty of possession of less than 25 grams of cocaine and possession of an open alcohol container in a vehicle, but acquitted him of operating a vehicle while intoxicated and it was unable to reach a verdict on an additional charge of resisting or obstructing a police officer.

-1-

On appeal, defendant first argues that the trial court engaged in misconduct by threatening defense counsel with contempt in the presence of the jury and remarking that the court gave the jury more credit than defense counsel did. The trial court denied defendant's motion for a mistrial. We review a trial court's decision on a motion for a mistrial for an abuse of discretion. *People v Nash*, 244 Mich App 93, 96; 625 NW2d 87 (2000). The trial court abuses its discretion when it chooses a result outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269-270; 666 NW2d 231 (2003). We review de novo whether the trial court's conduct denied a defendant a fair trial. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

"A trial court should grant a mistrial 'only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial.' " *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010), quoting *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). A judge has a duty to control proceedings in the courtroom. MCL 768.29. A judge has discretion to hold a person in contempt. *In re Contempt of Dudzinski*, 257 Mich App 96, 99; 667 NW2d 68 (2003). Contempt of court constitutes "a willful act, omission, or statement that tends to impede the functioning of a court." *Id.* at 108 (citations and quotation marks omitted). However, a trial court's conduct in the presence of a jury denies a defendant a fair trial when the conduct "pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 164. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id.*

During defense counsel's cross-examination of the officer who initiated the traffic stop, counsel inquired if the officer recalled testifying at a previous hearing as to the basis of his statement in an affidavit for a search warrant for a blood draw. The prosecutor interjected and asked if defense counsel was paraphrasing the officer's response. The following exchange took place in the presence of the jury:

> *Q:* (By Mr. Halpern, continuing) As a part of that hearing that you were asked these questions and gave these answers, "As a part of that, referring to the affidavit that you—that you did in fact write, is this your writing? Yes. Did you write, quote, 'fail to stop at the crossing Michigan Avenue from sports bar?'" Answer, "Yes, I did. Was that the truth under oath? Yes, it was." Question, "He was coming from a sports bar?" Answer, "Well apparently, that was my impression"—
>
> *MR. IDEMA:* Your Honor, I apologize—
>
> *MR. HALPERN:*--"when I wrote that."
>
> *MR. IDEMA:*--but defense counsel is not reading directly from the report. If he could read from the report or have the officer read from—from the transcript, I have no problem with that. But for defense counsel to put it in his own—

*THE COURT:* Is he paraphrasing?

*MR. IDEMA:* I believe he was there.

*MR. HALPERN:* No.

*MR. IDEMA:* I—I don't know. I don't have the transcript, Your Honor—

*THE COURT:* Is that—

*MR. HALPERN:* Yeah, well, it's—

*MR. IDEMA:*--but it looked like he was paraphrasing.

*MR. HALPERN:*--you can't make an objection—

*THE COURT:*--is that word for word? Mr. Halpern—

*MR. HALPERN:*--if you don't know what you're talking about, sir.

*THE COURT:*--is that word for word?

*MR. HALPERN:* Yes. "Well apparently that was my impression when I wrote that, yes." Why would I put in words that aren't there?

*THE COURT:* Don't argue with me. I was asking you a question to clarify to make sure the jury's getting the proper information.

*MR. HALPERN:* Yeah, but I would never—

*THE COURT:* You raise your voice to me again I'm going to hold you in contempt, and we'll put—

*MR. HALPERN:* --I would never—

*THE COURT:*--no.

*MR. HALPERN:*--I would never do that.

*THE COURT:* You're interrupting me again, Mr. Halpern, and I've already told you before. You do it again, I'm going to hold you in contempt.

The parties did not further discuss the issue of contempt, but defense counsel engaged in extensive cross-examination of the arresting officer concerning the position of the officer's patrol vehicle when it made a U-turn to pursue defendant's vehicle. The trial court and defense counsel thereafter engaged in the following colloquy:

-3-

*THE COURT:* Okay. But this is pretty much—we've been beating this to death. It's been going on now for over an hour, and I think the jury's got it. So I may be wrong. If you want to continue, go ahead, but—

*MR. HALPERN:* Thanks.

*THE COURT:*--they're all nodding their heads. They seem to get it.

*MR. HALPERN:* Sure. You know I—about that, Judge, if it's one thing I know for sure is that I don't know. When—you know, you say the jury's got it.

*THE COURT:* Well after you go over the same issue for over an hour, I think almost anybody could figure it out.

*MR. HALPERN:* Well if the jury's—

*THE COURT:* I bet we could bring a bunch of sixth graders in here, and they could figure it out.

*MR. HALPERN:* I—I don't—I don't know, and I'm sure the Court doesn't know.

*THE COURT:* Well—

*MR. HALPERN:* I—nobody knows what the jury's where the jury's at at this time—

*THE COURT:* I—I give them—

*MR. HALPERN:*--or what they believe or understand.

*THE COURT:*--more credit than you do.

*MR. HALPERN:* That's impossible.

*THE COURT:* Go ahead.

Defense counsel thereafter moved to another subject.

Defendant now argues that the trial court's threat to hold defense counsel in contempt in the presence of the jury and its remark that it trusted the jury more than defense counsel apparently did denied him a fair trial because the remarks denigrated counsel and implied that the court was prejudiced in favor of the prosecution. We disagree.

Although the better practice is to excuse the jury before citing an attorney for contempt, circumstances can justify the trial court in taking action in the jury's presence. *People v Williams*, 162 Mich App 542, 547; 414 NW2d 139 (1987). In this case, the record discloses that the trial court and defense counsel had a contentious relationship throughout the proceedings. On the first day of trial, outside the presence of the jury, the trial court expressed frustration

when defense counsel initially said that he had no witnesses, but then indicated that he planned to call witnesses. The exchange quoted above occurred when counsel raised his voice while disagreeing with the trial court, and then interrupted the court. Perhaps the better practice would have been for the court to excuse the jury, but the incident was isolated, the court did not actually hold counsel in contempt, and no such exchange occurred again. Moreover, viewed in context, the jury would have understood that the court was expressing frustration because defense counsel had raised his voice and interrupted the court, and then persisted in repetitive cross-examination. The exchanges did not suggest an appearance of advocacy or partiality in favor of the prosecution or against defendant. In addition, the trial court later instructed the jury that if it thought the court had any opinion as to how the case should be decided, it was to disregard that opinion and decide the case solely on the evidence. Considering the totality of the circumstances, it is not reasonably likely that the court's remarks influenced the jury by creating the appearance of advocacy or partiality against defendant. *Stevens*, 498 Mich at 164. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

Defendant next argues that the prosecution violated MCR 6.201 by failing to provide defense counsel with a full report of all of laboratory technician Brina Gendhar's findings regarding the screening of defendant's blood sample for cocaine. The report provided to defense counsel indicated that the blood was screened for various substances, but did not provide the results of the screen. Defense counsel complained that he was unable to properly cross-examine the witness because he did not have the full report. Counsel again moved for a mistrial, which the trial court denied.

We review the trial court's decision denying defendant's motion for a mistrial for an abuse of discretion. *Nash*, 244 Mich App at 96. Likewise, the trial court's determination of an appropriate remedy for a discovery violation is also reviewed for an abuse of discretion. *People v Rose*, 289 Mich App 499, 524; 808 NW2d 301 (2010).

MCR 6.201 governs discovery and provides, in pertinent part:

> **(A) Mandatory Disclosure.** In addition to disclosures required by provisions of law other than MCL 767.94a, a party upon request must provide all other parties:
>
> * * *
>
> (3) the curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion;

Gendhar's report indicated that defendant's blood sample was screened for a number of substances, including cocaine. The report did not contain the results of the screening; Gendhar indicated that her office did not publish the supporting documentation. It is undisputed that neither party received the supporting documentation. In its final instructions, the trial court told the jury:

Now one of the reports admitted into evidence as to the blood testing contains a reference to preliminary cocaine testing. However, you are not to consider this as evidence of a finding of cocaine in his blood.

Defendant's argument is that supporting documentation that is not published as a matter of course nevertheless should have been provided so that defense counsel could more fully cross-examine Gendhar on her findings. Even assuming arguendo that the prosecutor violated MCR 6.201(A)(3) by failing to provide the non-published supporting documentation for Gendhar's report to defense counsel, reversal is not warranted. A nonconstitutional discovery violation does not require reversal unless the defendant establishes that it is more probable than not that the violation was outcome determinative. *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000). An error is outcome determinative if it undermined the reliability of the verdict, considering the nature of the error in light of the weight and strength of the untainted evidence. *Id.* The nature of the alleged error in this case involves a failure to include the results of the cocaine screen in Gendhar's report. Defendant asserts that if he had known the results before trial, he could have prepared a defense aimed at challenging the reliability of the screening tests at the lab. However, the trial court instructed the jury to disregard the report's reference to screening for cocaine, and advised the jury that it could not consider this evidence as a finding of cocaine in defendant's blood. A jury is presumed to follow its instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). The trial court's instruction resolved the problem.

Next, defendant argues that the trial court invaded the province of the jury and denied him a fair trial by instructing the jury that his exhibits, consisting of several photographs and a video of the area of the traffic stop, should be given only limited weight because they were taken in a different season. We disagree. We review de novo a claim of instructional error. *People v Fennell*, 260 Mich App 261, 264; 677 NW2d 66 (2004).

The jury is the factfinder and determines the weight to be given to evidence. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). Defendant offered for admission photographs and a video of the area in which the incident occurred. It is undisputed that the traffic stop took place in March and the photographs and video were taken in November. The trial court told the jury as much, and stated that the photographs of the streets did not necessarily depict traffic, etc., at the time the incident occurred. Contrary to what defendant argues, the trial court did not state, and its remarks did not suggest, that the exhibits "should not be given much weight." The trial court merely provided accurate factual information about the circumstances in which the exhibits were created. Moreover, during the trial court's final instructions, the court told the jury that it was to decide the meaning and importance of each piece of evidence. Defendant's assertion that the trial court invaded the province of the jury is not supported by the record.

Next, defendant argues that the prosecution's failure to preserve audio and video recordings of the traffic stop violated his right to due process. We disagree. "[D]ue process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the evidence." *People v Jackson*, 292 Mich App 583, 590-591; 808 NW2d 541 (2011), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish that the failure to disclose information constituted a denial of due process, the defendant must show that: (1) the state possessed information that was

favorable to the defendant; (2) the evidence was suppressed; and (3) the evidence was material. *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). Evidence is material if, had it been disclosed, it is reasonably probable that the result of the proceedings would have been different. *Cone v Bell*, 556 US 449, 469-470; 129 S Ct 1769; 173 L Ed 2d 701 (2009). A reasonable probability is one that undermines confidence in the result. *Chenault*, 495 Mich at 150. If the evidence is of unknown probative value, its loss denies the defendant due process only when the police acted in bad faith. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988). The defendant has the burden of establishing that the police acted in bad faith. *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007).

Defendant argues that the trial court erred in holding that he was required to demonstrate that the police acted in bad faith by failing to preserve the audio/video recording. Essentially, defendant assumes that an audio/video recording existed and that it was exculpatory, and therefore not subject to the requirement that bad faith be shown. We conclude that the trial court did not err in denying defendant's motion to dismiss based on the prosecution's failure to produce an audio or video recording of the event.

The state trooper testified that he thought the recording system was operating properly on the day of the incident because the system gave him no reason to believe otherwise. The trooper noted that his vehicle's overhead lights were not activated when he pulled into the parking lot behind defendant's car; therefore, the video would not have been activated. He stated that an audio recording would have been made during the incident, but when he checked the hard drive onto which the recording would have been loaded, he found that it was empty. Audio and video from all sources recorded during the time the incident occurred were erased. The trooper surmised that the erasure might have been caused by a switch to a new recording system. Defendant's assumption to the contrary, these facts do not establish that any audio or video recording ever existed, or if they did exist, that they were deliberately erased in bad faith. *Hanks*, 276 Mich App at 95. Accordingly, the trial court did not err by denying defendant's motion to dismiss.

Finally, defendant argues the prosecutor engaged in misconduct during closing argument by mischaracterizing defendant's testimony and shifting the burden of proof to defendant. A claim of prosecutorial misconduct is reviewed de novo. *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001). However, because defendant did not object to the challenged remarks at trial, this issue is unpreserved. An unpreserved issue is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). No error requiring reversal will be found if the prejudicial effect of the prosecutor's remarks could have been cured by a timely instruction. *People v Leshaj*, 249 Mich App 417, 419; 641 NW2d 872 (2002).

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Prosecutorial misconduct issues are decided on a case-by-case basis. The reviewing court must examine the pertinent portion of the record, and evaluate a prosecutor's remarks in context. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000).

During closing argument, the prosecutor stated that the evidence showed that defendant knowingly possessed the cocaine found in his pocket. The prosecutor then stated:

> Now defense counsel asked him, and this is key, do you use cocaine? No, I don't use cocaine, and that was it. That's the only thing he asked him. Defense counsel didn't ask him what about the cocaine that was found on you—in your pocket. He didn't ask him that. He just asked him did you use cocaine. Think about that, ladies and gentlemen. That was the only, in all the days we've been here in trial, that was the only time the defense brought up or even asked him about the cocaine. Do you use it? He didn't ask him anything about what was found in his pocket.

In *People v Fyda*, 288 Mich App 446; 793 NW2d 712 (2010), this Court made the following observations regarding shifting the burden of proof:

> A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof. Also, a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof. However, a prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment. A prosecutor may also argue that the evidence was uncontradicted even if the defendant is the only person who could have contradicted the evidence. [*Id*. at 464 (footnotes omitted).]

To the extent that the prosecutor's comment implied that defendant was required to explain the presence of the cocaine, any perceived prejudice could have been cured by an appropriate instruction upon request. Even without an objection, the trial court instructed the jury that the prosecutor had the burden of proof, and that defendant was not required to prove his innocence. The court's instruction was sufficient to protect defendant's substantial rights, and the jury is presumed to have followed the court's instructions. *Graves*, 458 Mich at 486. Therefore, reversal is not required.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Jane M. Beckering